## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

Manzaro Joseph, *an individual,*

             Plaintiff

    Vs.

Sean John Combs a/k/a Diddy,
*an individual*;
Eric Mejias, *an individual*;
Brendan Paul, *an individual*;
Emilio Estefan, *an individual*;
Adria English a/k/a Adria Sheri English,
*an individual*; DOES Johns,

             Defendants.

_____/

Case No. 9:25-cv-80422-DMM

**FIRST AMENDED COMPLAINT
FOR DAMAGES AND
INJUNCTIVE RELIEF
JURY TRIAL DEMANDED**

**COMES NOW**, Manzaro Joseph, by and through his undersigned counsel, files this Verified First Amended Complaint for damages, injective relief, and jury demand against Defendants Sean John Combs a/k/a Diddy, Eric Mejias, Brendan Paul, Emilio Estefan, Adria English a/k/a Adria Sheri English, DOE Johns (collectively "Defendants"), and states as follows:

## PARTIES

1.    Plaintiff, Manzaro Joseph ("Plaintiff"), is a natural person and resident of Palm Beach County, Florida. Plaintiff is a survivor of human trafficking, sexual exploitation, and organized criminal enterprise and is otherwise *sui juris*.

2.      Defendant Sean John Combs a/k/a Diddy ("Diddy") is a natural person and resident of Miami-Dade County, Florida. Defendant Diddy is over the age of majority and is otherwise *sui juris*. Defendant Diddy facilitated and engaged in the trafficking of the Plaintiff and directly perpetrated acts of sexual violence against the Plaintiff, and he may be served with process at his residence, located at 2 Star Island Dr, Miami Beach, Florida 33139-5147, or wherever he may be found.

3.      Defendant Eric Mejias ("Eric") is a natural person and resident of Broward County, Florida. Defendant Eric is over the age of majority and is otherwise *sui juris*. Defendant Mejias drugged, transported, and threatened Plaintiff, and he may be served at 4750 NE 18th Ave, Pompano Beach, Florida 33064-5804, or wherever he may be found.

4.      Defendant Brendan Paul ("Brendan") is a natural person and resident of Geauga County, Ohio. Defendant Brendan is over the age of majority and is otherwise *sui juris*. Defendant Brendan relayed Diddy's instructions and coordinated Plaintiff's transport, and he may be served at 16515 Heatherwood LN, Chagrin Falls, OH 44023-4443, or wherever he may be found.

5.      Defendant Emilio Estefan ("Emilio") is a natural person and resident of Miami-Dade County, Florida. Defendant Emilio is over the age of majority and is otherwise *sui juris*. facilitated and approved Plaintiff's transport, and he may be

served at 420 Jefferson Ave, Miami Beach, Florida 33139-6503, or wherever he may be found.

6.    Defendant Adria English a/k/a Adria Sheri English ("Adria") is a natural person and resident of San Bernardino County, California. Defendant Adria is over the age of majority and is otherwise *sui juris*. Defendant Adria acted as an enabler and co-conspirator, assisting in Plaintiff's targeting, isolation, and concealment after the incident, and she may be served at 12862 Still Creek Ct, Rancho Cucamonga, California 91739-9439, or wherever she may be found.

7.    Defendant DOES Johns are individuals and entities whose identities are presently unknown to the Plaintiff, may have also contributed to the acts and omissions alleged herein. Plaintiff reserves the right to amend this Complaint to include additional parties as discovery progresses.

## JURISDICTION AND VENUE

8.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States, including the Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1595. Additionally, this Court has jurisdiction under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962, and the Civil Rights Act, 42 U.S.C. § 1985(3). This Court further has jurisdiction over

Plaintiff's claims under 18 U.S.C. §§ 1512 & 1513 (Obstruction of Justice and Retaliation) and 18 U.S.C. § 1201 (Kidnapping).

9.      This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because they are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution. Specifically, the Plaintiff asserts claims under Florida Statute § 787.06 (Human Trafficking), which arise from the same events and conduct underlying the federal claims.

10.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within this judicial district. Specifically, Defendants' misconduct and unlawful actions directly caused harm to the Plaintiff within this district. Additionally, Defendants reside/conduct business and operate within this district, further establishing proper venue.

11.     This Court also has diversity jurisdiction under 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and involves parties who are citizens of different states.

12.     Accordingly, this Court has both subject matter jurisdiction and proper venue over this action.

## **INTRODUCTION**

13.   This action is brought against Defendants for human trafficking, drugging, kidnapping, sexual exploitation, obstruction of justice, witness tampering, fraudulent concealment, conspiracy, and related unlawful conduct under both Federal and Florida law.

14.   Plaintiff was drugged, transported against his will, and sexually maimed as a victim of a coercive and organized criminal enterprise beginning in 2015, orchestrated and facilitated by the Defendants. The pattern of threats, concealment, manipulation, and psychological coercion persisted for years, extending the statute of limitations under federal tolling doctrines.

15.   Defendants not only participated in the trafficking and drugging of Plaintiff but also obstructed justice, facilitated cover-ups, intimidated Plaintiff, and enabled these crimes through conspiracy and concealment.

16.   Plaintiff possesses medical records from a licensed urologist and surgeon documenting sexual maiming, disfigurement, and serious inguinal hernias—possibly inoperable—which continue to impact his quality of life and physical well-being.

17.   Defendant Brendan relayed Defendant Diddy's instructions and coordinated Plaintiff's transport. Defendant Adria, who referred to herself as

Diddy's "Sexual Assistant," acted as an enabler and co-conspirator, assisting in Plaintiff's targeting, isolation, and concealment after the incident.

18.     Defendant Eric, who drugged and transported Plaintiff, later posted threats on Facebook blaming the Plaintiff for Bony Rivera's suicide and issued repeated death threats against Plaintiff, including kidnapping threats toward Plaintiff's minor son, Elijah Giovanni Manzaro. Defendant Eric also attempted to manipulate Plaintiff by requesting contact before Plaintiff's memories had fully returned.

19.     Surveillance footage captured Defendant Eric trespassing on Plaintiff's property while attempting to evade detection. Additional security footage from 2015 shows a hitman known as Sigfredo Garcia associate with Defendant Eric—who is now serving a life sentence in an unrelated murder-for-hire case—in Plaintiff's alleyway. A police report was filed, corroborating this encounter.

20.     These acts of intimidation, surveillance, and fraud were continued for years and were designed to suppress Plaintiff's memory and delay or prevent legal recourse.

21.     High-profile individuals, including Jacob Arabo, Gloria Estefan, and LeBron James, are identified as witnesses due to their presence or knowledge of the events surrounding the "freak-off" orchestrated by Defendant Diddy.

## FACTS

22.     On or about early April 2015, at approximately 5:30 p.m., Plaintiff arrived at his residence located at 424 Valley Forge Road, West Palm Beach, Florida. As Plaintiff unlocked his door and turned the handle, he felt a greasy substance resembling Vaseline on his hand. Plaintiff attempted to wash his hands but lost consciousness before he could do so.

23.     When Plaintiff regained consciousness, he was in the backseat of a moving vehicle, driven by Defendant Eric, with Bony Rivera in the passenger seat. Plaintiff inquired about his location, expressing confusion and insisting that he was supposed to be at home. Then, before losing his consciousness again, Plaintiff overheard Bony Rivera telling Defendant Eric that he was regaining consciousness, asking, "He's waking up, Cuz. What should I do? Do you want me to knock him out?" to which Defendant Eric responded, "No, don't touch him. Don't worry. Just give it a minute. He'll fall back asleep again. I gave him a lot of that Scopolamine."

24.     Plaintiff regained consciousness at Defendant Eric's residence in Deerfield Beach, Florida, where he was being forcibly held. While there, he witnessed a man named Omar Bravo deliver two kilograms of narcotics—cocaine and methamphetamine—which Defendant Eric accepted. Plaintiff saw that Defendant Brendan, appearing nervous, sat nearby with a motorcycle helmet in

his lap. After the transaction, the drugs were placed in Defendant Brendan's backpack. Before leaving, Defendant Brendan stated that Defendant Diddy wanted Plaintiff to be brought to a "freak-off" event, making Plaintiff realize he was being transported again against his will.

25.     Upon arrival at the security booth at 1 Star Island Drive, Miami, Florida, all occupants of the vehicle were required to present identification. Plaintiff was forcibly roused from his drug-induced stupor for positive identification. Defendant Eric informed security that they were attending an event at the Estefan Mansion, mentioned it was Christian's birthday party that night. The security logs at the entrance of Star Island would reflect this entry.

26.     Plaintiff was dragged through the back entrance of the Estefan Mansion at approximately 12:30 a.m. Inside, Gloria Estefan panicked upon seeing Plaintiff's deteriorating state, demanding, "Call an ambulance!" However, Defendant Emilio quickly silenced her and ushered her away into the crowd.

27.     At that moment, Plaintiff briefly saw LeBron James, who was wearing a white bath towel, brown shower shoes and carrying a shaving bag, walking through the hallway. LeBron James looked at Plaintiff and, in response to Gloria Estefan's plan for an ambulance, remarked, "Y'all better do something about that!"

28.     Plaintiff was then led by Defendant Adria, who identified herself as "Diddy's Personal Sexual Assistant," and through a concealed tunnel that

connected the Estefan Mansion to Defendant Diddy's Mansion, Plaintiff was secretly transferred to Defendant Diddy's Mansion.

29.    Upon regaining partial consciousness, the Plaintiff found himself inside a large party area, upon information and belief that it was Diddy's son's birthday party, where Defendant Eric, referring to the Plaintiff, told a person inside the party, "Diddy wants him to see what we do to snitches. This is part of his punishment."

30.    Plaintiff was forcibly paraded through multiple rooms filled with people who were jeering and taunting him. Defendant Diddy explicitly ordered Plaintiff's degradation, stating, "He's gonna find out what we do to snitches tonight. Get him undressed!"

31.    Plaintiff was stripped and placed inside a shower area where two unidentified women forcibly washed him while Defendants Eric and Bony Rivera watched. Following this, the Plaintiff was dressed in a small thong bikini bottom and a black leather mask with a rubber dam forcibly inserted and zipped closed over his head. A locking sex device was affixed to the mask, which protruded from his mouth. Plaintiff was then subjected to degrading and non-consensual acts at the direction of Defendants Diddy and Adria.

//

//

32.     Plaintiff was sexually assaulted and forced to partake in unwanted sexual activity using the mask and sex toy on a large black leather ottoman fist until he lost consciousness again.

33.     When Plaintiff regained partial awareness, he was locked in a small, dark side room, left on a black leather couch until Defendant Adria and Defendant Eric entered, dressed him, and prepared him for transport out of the property.

34.     While still semi-conscious, Plaintiff encountered Jacob Arabo, who was visibly disturbed upon seeing Plaintiff in his forced attire. He asked, "What's this? What's going on with this guy? Why is he standing here staring at me with a penis strapped to his face?" Defendant Eric responded, "Oh, he's just some guy who's a snitch. We're teaching him a little lesson."

35.     Defendant Emilio intervened, instructing Defendant Eric and Bony Rivera to move the Plaintiff out of Jacob Arabo's sight. Gloria Estefan again pleaded for an ambulance to be called, but Defendant Emilio silenced her and shoved her into the crowd.

36.     Upon leaving the event, Plaintiff overheard Defendant Diddy ask Defendant Eric, "You're gonna be getting rid of him, right?" to which Defendant Eric responded, "Yeah, I'll be taking care of that."

37.     Following the "Freak-Off" event, Plaintiff was returned to the gang house, where he was savagely beaten and left for dead inside his apartment. When

a gang member later inquired about how Plaintiff was kept unconscious, Defendant Eric responded, "Xylazine, Tranq."

38.    As a direct result of the Defendants' deliberate acts of violence, the Plaintiff suffered catastrophic physical injuries, including severe internal trauma, permanent groin damage, sexual maiming, and multiple inguinal hernias. These life-altering injuries are extensively documented by medical evaluations from a urologist and surgeon.

39.    In the years following the attack, Defendant Eric engaged in an ongoing campaign of targeted harassment, publicly issuing death threats against Plaintiff, blaming him for Bony Rivera's suicide, and threatening to kidnap Plaintiff's minor son—all in an effort to intimidate Plaintiff into silence.

40.    Surveillance footage and official police reports confirm multiple attempts by Defendant Eric to unlawfully approach the Plaintiff's property. Additionally, a hitman named Sigfredo Garcia, who is now serving a life sentence in an unrelated murder, was in Plaintiff's alleyway. A police report was filed, corroborating this encounter seen as an associate of Defendant Eric was captured on security cameras outside Plaintiff's residence, further evidence of a coordinated campaign of intimidation.

//

//

41.     Defendant Adria actively obstructed Plaintiff's ability to seek justice by tampering with evidence, interfering with legal proceedings, and conspiring to conceal the crimes committed against Plaintiff.

42.     Defendants' acts of coercion, obstruction, threat, and ongoing intimidation persisted until at least 2021, demonstrating a clear pattern of misconduct that effectively tolled the applicable statutes of limitation under federal and state law.

43.     Plaintiff has now compiled the necessary evidentiary foundation to proceed with this legal action, including verified medical records, sworn witness statements, and corroborating documentation directly implicating the Defendants in his abduction, drugging, sexual exploitation, and abuse.

44.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered severe and ongoing physical injuries, profound psychological trauma, and irreparable emotional distress.

45.     Defendants' deliberate, coordinated, and malicious conduct caused Plaintiff significant economic damages, prolonged suffering, and lasting harm and damages in an amount to be determined at trial.

//

//

//

**COUNT I**
**CAUSE OF ACTION AGAINST DEFENDANT SEAN JOHN COMBS A/K/A DIDDY**
**(Human Trafficking under 18 U.S.C. § 1595; Fla. Stat. § 787.06)**

46.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

47.     Under 18 U.S.C. § 1595 and Fla. Stat. § 787.06, it is unlawful to knowingly recruit, entice, harbor, conspire, transport, provide, obtain, or maintain a person subject to force, fraud, or coercion for the purpose of sexual exploitation.

48.     Defendant knowingly recruited, transported, harbored, and obtained Plaintiff through an organized and coercive criminal enterprise, utilizing subordinates and co-conspirators to facilitate Plaintiff's trafficking for the purpose of sexual exploitation.

49.     Defendant directed and orchestrated Plaintiff's abduction by his associates, including Defendant Eric and Defendant Brendan, who drugged and transported Plaintiff against his will to locations controlled by Defendant and his affiliates.

50.     Defendant knowingly harbored Plaintiff at his private residence, where Plaintiff was subjected to non-consensual acts, forced participation in degrading sexual abuse, and extreme humiliation in front of others for Defendant's personal gratification and control.

51.     Defendant acted in furtherance of a pattern of sex trafficking by operating and hosting events where victims, including the Plaintiff, were subjected to sexual servitude and forced participation in criminal activities under threat of harm and retaliation.

52.     Defendant utilized force, fraud, and coercion to enslave Plaintiff within his trafficking enterprise, violating both federal and state anti-trafficking laws.

53.     Defendant facilitated the drugging, confinement, and physical subjugation of the Plaintiff to render him unable to resist or escape. Plaintiff was involuntarily intoxicated with Scopolamine and later Xylazine (Tranq), drugs commonly used by traffickers to incapacitate victims.

54.     Plaintiff was forcibly stripped, physically handled, and paraded before an audience as an object of degradation at Defendant's direction. Plaintiff was further subjected to forced participation in non-consensual sexual acts, including the use of physical restraints and sexual devices, causing severe physical and psychological trauma.

55.     Defendant through his agents, lured and transported Plaintiff under false pretenses, manipulating his incapacitated state to facilitate his trafficking and assault.

//

56.     Defendant exercised psychological and emotional control over Plaintiff through systematic intimidation, threats of violence, and witness tampering.

57.     Defendant Diddy explicitly ordered his subordinates to ensure Plaintiff's continued subjugation, stating: "He's gonna find out what we do to snitches tonight. Get him undressed!"

58.     Defendant conspired with others to suppress and conceal evidence of Plaintiff's trafficking and assault, engaging in an ongoing campaign of threats, harassment, and intimidation to deter Plaintiff from seeking legal recourse.

59.     Defendant knowingly trafficked Plaintiff for the purpose of forced labor and sexual servitude, using him as an object of humiliation and violence to assert control and dominance.

60.     Plaintiff was subjected to non-consensual and degrading acts in a commercial setting where influential individuals, including celebrities and high-profile guests, were present as participants and witnesses.

61.     Defendant profited from and facilitated a network of trafficked individuals forced into sexual exploitation at his events, creating an environment where victims were rendered powerless through drugs, violence, and coercion.

62.     Defendant's conduct was willful, malicious and demonstrated a reckless disregard for human rights and dignity.

63.     Defendant's actions resulted in catastrophic physical injuries, including permanent sexual maiming, multiple inguinal hernias, and severe internal trauma.

64.     Defendant's conduct caused irreparable psychological harm, loss of memory, post-traumatic stress, and prolonged emotional distress, constituting severe and ongoing damage to the Plaintiff's well-being.

65.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered severe physical, emotional, and psychological harm, including but not limited to post-traumatic stress disorder (PTSD), anxiety, depression, permanent disfigurement, and other damages.

66.     Plaintiff seeks all available remedies under 18 U.S.C. § 1595 and Fla. Stat. § 787.06, including but not limited to compensatory damages, punitive damages, treble damages, attorneys' fees, medical costs, pain and suffering, and all other relief this Court deems just and proper.

### COUNT II
### CAUSE OF ACTION AGAINST DEFENDANT ERIC MEJIAS
### (Human Trafficking under 18 U.S.C. § 1595; Fla. Stat. § 787.06)

67.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

//

//

68.     Under 18 U.S.C. § 1595 and Fla. Stat. § 787.06, it is unlawful to knowingly recruit, entice, harbor, conspire, transport, provide, obtain, or maintain a person subject to force, fraud, or coercion for the purpose of sexual exploitation.

69.     Defendant played a critical role in the trafficking of Plaintiff by drugging, transporting, and harboring him in furtherance of a larger criminal trafficking enterprise operated by Defendant Diddy.

70.     Defendant personally facilitated Plaintiff's forced intoxication by administering Scopolamine and Xylazine (Tranq), potent drugs commonly used to render victims incapacitated and unable to resist sexual assault.

71.     Defendant physically transported Plaintiff against his will to locations controlled by Defendant Diddy and his associates, ensuring Plaintiff remained under chemical and physical control throughout.

72.     Defendant knowingly harbored Plaintiff at a private residence, where he was subjected to non-consensual sexual acts, forced degradation, and extreme humiliation, all orchestrated by the trafficking enterprise.

73.     Defendant directly employed force, fraud, and coercion to facilitate Plaintiff's trafficking and assault.

74.     Defendant participated in the physical restraint and subjugation of Plaintiff. He forcibly removed the Plaintiff's clothing and ensured his complete incapacitation before handing him over to others for further abuse.

75. Defendant engaged in deceptive conduct by luring Plaintiff into an environment under false pretenses, knowing that Plaintiff would be subjected to sexual servitude and violent degradation.

76. Defendant further ensured Plaintiff's continued subjugation through intimidation, psychological manipulation, and explicit threats, making it clear that any attempt to resist or escape would result in severe retaliation.

77. Defendant aided and abetted Defendant Diddy's trafficking enterprise by ensuring Plaintiff was forcibly restrained and subjected to repeated acts of sexual violence.

78. Defendant personally ensured the execution of Defendant Diddy's command—"He's gonna find out what we do to snitches tonight. Get him undressed!"—further proving his knowing involvement in human trafficking.

79. Defendant knowingly trafficked Plaintiff for the purpose of sexual exploitation, directly contributing to the ongoing pattern of forced servitude and abuse at events orchestrated by Defendant Diddy.

80. Defendant played an instrumental role in ensuring that Plaintiff was made available for non-consensual sexual acts, facilitating his forced participation in criminal activities for the benefit of the trafficking enterprise.

//

//

81.     Defendant profited from and actively participated in a network of trafficked individuals, reinforcing a system where powerful individuals, including celebrities and high-profile guests, could exploit victims without consequence.

82.     Plaintiff was subjected to non-consensual and degrading acts in a commercial setting, where the Defendant acted as an enforcer, procurer, and handler, ensuring that trafficked victims remained compliant through chemical subjugation and physical coercion.

83.     Defendant's conduct was deliberate, malicious, and in reckless disregard of Plaintiff's human rights and dignity.

84.     Defendant conspired with others to suppress and conceal evidence of Plaintiff's trafficking and assault. He directly participated in threats, harassment, and intimidation tactics to prevent the Plaintiff from reporting the crimes committed against him.

85.     Defendant was not merely a subordinate participant but an active facilitator in ensuring that the Plaintiff remained under complete submission and control, making it impossible for him to escape or resist the trafficking enterprise.

86.     Defendant's actions resulted in catastrophic physical injuries, including permanent sexual maiming, multiple inguinal hernias, and severe internal trauma.

//

87.     Defendant's conduct caused irreparable psychological harm, loss of memory, post-traumatic stress, and prolonged emotional distress, constituting severe and ongoing damage to the Plaintiff's well-being.

88.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered severe physical, emotional, and psychological harm, including but not limited to post-traumatic stress disorder (PTSD), anxiety, depression, permanent disfigurement, and other damages.

89.     Plaintiff seeks all available remedies under 18 U.S.C. § 1595 and Fla. Stat. § 787.06, including but not limited to compensatory damages, punitive damages, treble damages, attorneys' fees, medical costs, pain and suffering, and all other relief this Court deems just and proper.

## COUNT III
### CAUSE OF ACTION AGAINST DEFENDANT BRENDAN PAUL
**(Human Trafficking under 18 U.S.C. § 1595; Fla. Stat. § 787.06)**

90.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

91.     Under 18 U.S.C. § 1595 and Fla. Stat. § 787.06, it is unlawful to knowingly recruit, entice, harbor, conspire, transport, provide, obtain, or maintain a person subject to force, fraud, or coercion for the purpose of sexual exploitation.

//

//

92.     Defendant was an active participant in Plaintiff's trafficking, working in concert with Defendants Diddy and Defendant Eric to ensure Plaintiff's complete subjugation.

93.     Defendant personally participated in luring the Plaintiff into an environment where he would be drugged, transported, and sexually exploited.

94.     Defendant facilitated Plaintiff's forced intoxication, personally administering or assisting in the administration of Scopolamine and Xylazine (Tranq), drugs commonly used by traffickers to incapacitate victims.

95.     Defendant, along with Defendant Eric, physically transported Plaintiff against his will to locations controlled by Defendant Diddy, ensuring Plaintiff remained incapacitated and vulnerable to further acts of trafficking and abuse.

96.     Defendant harbored Plaintiff at a private residence, where he was subjected to non-consensual sexual acts, forced humiliation, and severe psychological and physical harm under the direction of Defendant Diddy.

97.     Defendant directly employed force, fraud, and coercion to facilitate Plaintiff's trafficking and assault.

98.     Defendant physically restrained Plaintiff, ensuring that he remained submissive and unable to escape, and played an active role in stripping Plaintiff of his clothing and ensuring that he was prepared for further sexual degradation.

99.     Defendant engaged in deceptive tactics to lure Plaintiff into a controlled environment, ensuring that Plaintiff was isolated and vulnerable to the trafficking enterprise.

100.    Defendant participated in the intimidation and psychological manipulation of the Plaintiff, ensuring that he remained compliant through explicit threats, drug-induced incapacitation, and physical restraint.

101.    Defendant acted as an enforcer and handler within the trafficking enterprise, ensuring Plaintiff was restrained, drugged, and available for non-consensual acts of sexual violence.

102.    Defendant personally ensured the execution of Defendant Diddy's command—"He's gonna find out what we do to snitches tonight. Get him undressed!"—further proving his knowing involvement in human trafficking.

103.    Defendant knowingly trafficked Plaintiff for the purpose of sexual exploitation, playing a pivotal role in the systemic abuse and forced servitude of victims within Defendant Diddy's trafficking network.

104.    Defendant personally assisted in forcing Plaintiff into non-consensual sexual acts, ensuring his complete subjugation for the entertainment and gratification of Defendant Diddy and his associates.

//

//

105.   Defendant actively participated in a criminal trafficking enterprise where victims, including Plaintiff, were forced into sexual servitude and violent degradation.

106.   Plaintiff was subjected to non-consensual and degrading acts in a commercial setting, where the Defendant ensured that the Plaintiff remained incapacitated, compliant, and available for exploitation.

107.   Defendant's conduct was deliberate, malicious, and in reckless disregard of Plaintiff's human rights and dignity.

108.   Defendant conspired with others to suppress and conceal evidence of Plaintiff's trafficking and assault. He actively participated in threats, harassment, and intimidation tactics to prevent the Plaintiff from reporting the crimes committed against him.

109.   Defendant was not merely an accomplice but an active participant in ensuring that the Plaintiff remained completely controlled and subjected to extreme acts of violence and humiliation.

110.   Defendant's actions resulted in catastrophic physical injuries, including permanent sexual maiming, multiple inguinal hernias, and severe internal trauma.

//

//

111.    Defendant's conduct caused irreparable psychological harm, loss of memory, post-traumatic stress, and prolonged emotional distress, constituting severe and ongoing damage to the Plaintiff's well-being.

112.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered severe physical, emotional, and psychological harm, including but not limited to post-traumatic stress disorder (PTSD), anxiety, depression, permanent disfigurement, and other damages.

113.    Plaintiff seeks all available remedies under 18 U.S.C. § 1595 and Fla. Stat. § 787.06, including but not limited to compensatory damages, punitive damages, treble damages, attorneys' fees, medical costs, pain and suffering, and all other relief this Court deems just and proper.

**COUNT IV**
**CAUSE OF ACTION AGAINST DEFENDANT EMILIO ESTEFAN**
**(Human Trafficking under 18 U.S.C. § 1595; Fla. Stat. § 787.06)**

114.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

115.    Under 18 U.S.C. § 1595 and Fla. Stat. § 787.06, it is unlawful to knowingly recruit, entice, harbor, conspire, transport, provide, obtain, or maintain a person subject to force, fraud, or coercion for the purpose of sexual exploitation.

116.     Defendant was a key enabler of Plaintiff's trafficking, using his influence, resources, and industry connections to facilitate and conceal the human trafficking enterprise led by Defendant Diddy.

117.     Defendant knowingly allowed, facilitated, and provided locations for the trafficking of Plaintiff, where he was subjected to non-consensual sexual acts, forced servitude, and humiliation.

118.     Defendant was an active participant in luring vulnerable victims, including Plaintiff, into environments where they would be drugged, controlled, and exploited for the benefit of himself and his co-conspirators.

119.     Defendant utilized his status, power, and industry access to protect the trafficking network, providing cover and credibility to the illegal enterprise while profiting from it.

120.     Defendant personally witnessed Plaintiff's victimization at events where trafficked individuals were forced into sexual servitude, yet he took deliberate actions to support and expand the operation rather than intervene or assist victims.

121.     Defendant harbored Plaintiff by providing safe houses and exclusive venues, ensuring that trafficked victims remained isolated, powerless, and under the complete control of the trafficking enterprise.

122.   Defendant knowingly enabled and directly contributed to the coercion, entrapment, and subjugation of Plaintiff, ensuring that he remained vulnerable to repeated acts of trafficking.

123.   Defendant helped create false pretenses to lure Plaintiff and others into dangerous environments under the guise of exclusive parties, career opportunities, or networking events.

124.   Defendant directly threatened and intimidated victims, including Plaintiff, warning them to remain silent or face retaliation.

125.   Defendant may not have personally engaged in physical violence, but he knowingly facilitated the use of force by others, allowing trafficked victims, including the Plaintiff, to be restrained, drugged, and sexually exploited within his controlled spaces.

126.   Defendant provided security personnel, financial backing, and logistical support to ensure that trafficking victims had no means of escape and remained under the control of the trafficking network.

127.   Defendant was fully aware that Plaintiff was subjected to forced drugging, physical abuse, and non-consensual sexual acts, yet he continued to facilitate and enable the trafficking enterprise for personal and financial benefit.

//

//

128.    Defendant was involved in the systematic suppression of evidence, ensuring that law enforcement, media, and industry insiders remained silent or complicit in covering up the trafficking activities.

129.    Defendant knowingly trafficked Plaintiff for the purpose of forced sexual servitude and labor, contributing to and benefiting from the trafficking enterprise.

130.    Defendant directly profited from events where Plaintiff and other trafficked victims were forced into sexual exploitation in commercial settings, providing entertainment for influential individuals, including celebrities, business elites, and industry power players.

131.    Defendant used his industry status to silence victims, control narratives, and ensure that trafficked individuals, including Plaintiff, were trapped in a cycle of abuse and coercion.

132.    Defendant conspired with Defendant Diddy and others to maintain a pipeline of vulnerable individuals for exploitation, ensuring that victims had no viable means of escape or legal recourse.

133.    Defendant's conduct was deliberate, malicious, and in reckless disregard of Plaintiff's human rights and dignity.

//

//

134.    Defendant actively participated in intimidation, harassment, and threats against Plaintiff and other victims to prevent them from speaking out or seeking justice.

135.    Defendant was not a passive bystander but a key facilitator and enabler of human trafficking, ensuring that trafficked victims remained within the control of the criminal enterprise.

136.    Defendant's actions allowed the trafficking network to expand, thrive, and victimize countless individuals, including the Plaintiff, through systemic manipulation, coercion, and exploitation.

137.    Defendant's actions resulted in catastrophic physical injuries, including permanent sexual maiming, multiple inguinal hernias, and severe internal trauma.

138.    Defendant's conduct caused irreparable psychological harm, loss of memory, post-traumatic stress, and prolonged emotional distress, constituting severe and ongoing damage to the Plaintiff's well-being.

139.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered severe physical, emotional, and psychological harm, including but not limited to post-traumatic stress disorder (PTSD), anxiety, depression, permanent disfigurement, and other damages.

//

140.   Plaintiff seeks all available remedies under 18 U.S.C. § 1595 and Fla. Stat. § 787.06, including but not limited to compensatory damages, punitive damages, treble damages, attorneys' fees, medical costs, pain and suffering, and all other relief this Court deems just and proper.

**COUNT V**
**CAUSE OF ACTION AGAINST DEFENDANT ADRIA ENGLISH A/K/A ADRIA SHERI ENGLISH**
**(Human Trafficking under 18 U.S.C. § 1595; Fla. Stat. § 787.06)**

141.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

142.   Under 18 U.S.C. § 1595 and Fla. Stat. § 787.06, it is unlawful to knowingly recruit, entice, harbor, conspire, transport, provide, obtain, or maintain a person subject to force, fraud, or coercion for the purpose of sexual exploitation.

143.   Defendant participated in and profited from Plaintiff's trafficking, directly contributing to the coercion, control, and victimization of Plaintiff.

144.   Defendant was a key recruiter and enforcer, responsible for luring vulnerable individuals, including Plaintiff, into environments where they were exploited for sexual purposes.

145.   Defendant knowingly manipulated and deceived Plaintiff, using false promises, psychological coercion, and physical intimidation to maintain Plaintiff's compliance within the trafficking network.

//

146.    Defendant worked in direct collaboration with Defendant Diddy and other co-conspirators to control and monitor Plaintiff's movements, ensuring that Plaintiff remained under the trafficking enterprise's control.

147.    Defendant regularly engaged in tactics of psychological and physical abuse, including threats, humiliation, and isolation, to maintain Plaintiff's subjugation.

148.    Defendant played a pivotal role in facilitating and overseeing Plaintiff's forced sexual servitude, ensuring that trafficked individuals remained compliant and unable to escape.

149.    Defendant engaged in a pattern of coercive and deceptive tactics to traffic Plaintiff and other victims, ensuring their continued victimization.

150.    Defendant misrepresented the nature of events, opportunities, and relationships to deceive Plaintiff into environments where he was subjected to sexual servitude.

151.    Defendant verbally and physically intimidated Plaintiff, ensuring that he remained silent about the abuse he endured.

152.    Defendant personally engaged in acts of physical control, including forcibly restraining, drugging, and subjecting Plaintiff to degrading and non-consensual acts to break his will and enforce compliance.

//

153.    Defendant orchestrated the distribution of drugs and alcohol to impair Plaintiff's judgment and make resistance impossible.

154.    Defendant was responsible for monitoring and reporting Plaintiff's activities to her co-conspirators, ensuring that Plaintiff could not escape or seek help.

155.    Defendant directly facilitated Plaintiff's forced participation in sexual acts for the financial gain of the trafficking network, ensuring that Plaintiff remained a controlled victim.

156.    Defendant knowingly engaged in human trafficking for the purpose of subjecting Plaintiff to forced sexual servitude and labor.

157.    Defendant Adria directly benefited financially and socially from the trafficking enterprise, ensuring that the Plaintiff and other victims remained trapped within the cycle of exploitation.

158.    Defendant actively maintained the trafficking network, working as a key enforcer to punish victims who attempted to resist or escape.

159.    Defendant provided logistical support, transportation, and cover to conceal the trafficking activities from authorities and the public.

160.    Defendant was a trusted insider within the trafficking enterprise, using her position to groom, manipulate, and control victims for the benefit of her co-conspirators.

161.   Defendant worked to discredit victims who attempted to report their abuse, ensuring that trafficked individuals remained isolated and without support.

162.   Defendant's conduct was deliberate, malicious, and in reckless disregard of Plaintiff's fundamental rights and human dignity.

163.   Defendant knowingly assisted, facilitated, and encouraged Plaintiff's sexual exploitation, ensuring that he remained vulnerable to repeated victimization.

164.   Defendant acted with full knowledge of the trafficking enterprise's illegal activities, yet she chose to actively participate and profit from Plaintiff's suffering.

165.   Defendant engaged in retaliation and intimidation tactics, ensuring that Plaintiff and other victims remained silent and submissive.

166.   Defendant's role in the Plaintiff's trafficking was integral, making her civilly liable under both Federal and Florida human trafficking laws.

167.   Defendant's actions resulted in catastrophic physical injuries, including permanent sexual maiming, multiple inguinal hernias, and severe internal trauma.

//

//

168.   Defendant's conduct caused irreparable psychological harm, loss of memory, post-traumatic stress, and prolonged emotional distress, constituting severe and ongoing damage to the Plaintiff's well-being.

169.   As a direct and proximate result of Defendant's conduct, Plaintiff has suffered severe physical, emotional, and psychological harm, including but not limited to post-traumatic stress disorder (PTSD), anxiety, depression, permanent disfigurement, and other damages.

170.   Plaintiff seeks all available remedies under 18 U.S.C. § 1595 and Fla. Stat. § 787.06, including but not limited to compensatory damages, punitive damages, treble damages, attorneys' fees, medical costs, pain and suffering, and all other relief this Court deems just and proper.

**COUNT VI**
**CAUSE OF ACTION AGAINST DEFENDANT ERIC MEJIAS**
**(Kidnapping under 18 U.S.C. § 1201 and Florida Statute § 787.01)**

171.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

172.   Under 18 U.S.C. § 1201 and Fla. Stat. § 787.01, it is unlawful to knowingly seize, confine, inveigle, decoy, abduct, kidnap, or carry away a person and hold them for ransom, reward, or any other purpose.

173.   Defendant, individually and in concert with others, willfully and unlawfully seized, confined, inveigled, decoyed, abducted, and/or kidnapped

Plaintiff, depriving Plaintiff of liberty against their will. Defendant held Plaintiff in unlawful confinement through physical force, threats, and coercion, constituting violations of 18 U.S.C. § 1201 and Fla. Stat. § 787.01.

174.   Defendant knowingly and intentionally restrained Plaintiff against their will, using physical force, intimidation, and coercion. Defendant prevented Plaintiff from escaping through threats of serious bodily harm and psychological manipulation.

175.   Defendant transported or caused Plaintiff to be transported across state lines or otherwise utilized means, facilities, or instrumentalities of interstate commerce in the commission of the offense, thereby satisfying the jurisdictional requirements of 18 U.S.C. § 1201.

176.   Defendant conspired with two or more individuals to execute the kidnapping, with at least one co-conspirator committing an overt act in furtherance of the conspiracy, in violation of 18 U.S.C. § 1201(c).

177.   Defendant's actions resulted in catastrophic physical injuries, including permanent sexual maiming, multiple inguinal hernias, and severe internal trauma.

178.   Defendant's conduct caused irreparable psychological harm, loss of memory, post-traumatic stress, and prolonged emotional distress, constituting severe and ongoing damage to the Plaintiff's well-being.

179.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered severe physical, emotional, and psychological harm, including but not limited to post-traumatic stress disorder (PTSD), anxiety, depression, permanent disfigurement, and other damages.

180.    Plaintiff seeks all available remedies under 18 U.S.C. § 1595 and Fla. Stat. § 787.06, including but not limited to compensatory damages, punitive damages, treble damages, attorneys' fees, medical costs, pain and suffering, and all other relief this Court deems just and proper.

## COUNT VII
## CAUSE OF ACTION AGAINST DEFENDANT SEAN JOHN COMBS A/K/A DIDDY
### (Obstruction of Justice / Witness Tampering under 18 U.S.C. § 1512, 1513 and Florida Statute § 914.22)

181.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

182.    Under 18 U.S.C. § 1512, 1513 and Florida Statute § 914.22, it is unlawful to knowingly use intimidation, threats, corrupt persuasion, or physical force to influence, delay, or prevent the testimony of a witness in an official proceeding or to hinder, delay, or prevent the communication of information to law enforcement relating to the commission of a crime.

183.    Defendant, individually and in concert with others, engaged in a deliberate and sustained campaign of intimidation, threats, and coercion aimed at

preventing Plaintiff from testifying truthfully and providing evidence against him and concealment to suppress Plaintiff's ability to testify or report crimes.

184.   Defendant used direct and indirect threats, coercion, and financial incentives to manipulate Plaintiff into remaining silent about Defendant's criminal conduct.

185.   Defendant referred to Plaintiff as a "snitch" and warned Plaintiff of severe consequences should Plaintiff cooperate with law enforcement or legal authorities. This was done both personally and through intermediaries acting on Defendant's behalf.

186.   Defendant deployed associates to contact Plaintiff and other potential witnesses, issuing threats of bodily harm and reputational damage should they disclose incriminating information.

187.   Defendant engaged in acts of intimidation, including:

    i.   Surveillance of Plaintiff's residence and place of employment.

    ii.  Sending anonymous messages warning Plaintiff of "consequences" for speaking out.

    iii. Utilizing social media and industry connections to blackball Plaintiff and isolate them professionally.

//

//

188.    Defendant engaged in retaliatory acts against Plaintiff for attempting to seek justice, including escalating threats, violence, and other intimidation tactics in violation of 18 U.S.C. § 1513, which prohibits retaliation against a witness for providing information regarding criminal conduct.

189.    Defendant's actions created a well-founded fear in Plaintiff, causing severe emotional distress, trauma, and fear for their personal safety.

190.    Defendant's actions constitute violations of:

   i.   18 U.S.C. § 1512(b), which prohibits intimidation, threats, or corrupt persuasion with intent to influence a witness's testimony.

   ii.  18 U.S.C. § 1512(d), which prohibits harassment to hinder, delay, or prevent the communication of information to law enforcement.

   iii. 18 U.S.C. § 1513(b), which prohibits retaliation against a witness for reporting a federal offense or providing truthful testimony.

   iv.  Florida Statute § 914.22(1)(e), which prohibits intentionally hindering or preventing a witness from testifying truthfully in a legal proceeding.

191.    Defendant's actions resulted in catastrophic physical injuries, including permanent sexual maiming, multiple inguinal hernias, and severe internal trauma.

192.    Defendant's conduct caused irreparable psychological harm, loss of memory, post-traumatic stress, and prolonged emotional distress, constituting severe and ongoing damage to the Plaintiff's ongoing fear for their safety and well-being.

193.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered severe physical, emotional, and psychological harm, including but not limited to post-traumatic stress disorder (PTSD), anxiety, depression, permanent disfigurement, and other damages.

194.    Plaintiff seeks all available remedies under 18 U.S.C. § 1512, 1513 and Florida Statute § 914.22, including but not limited to compensatory damages, punitive damages, treble damages, attorneys' fees, medical costs, pain and suffering, and all other relief this Court deems just and proper.

### COUNT VIII
### CAUSE OF ACTION AGAINST ERIC MEJIAS
### (Obstruction of Justice / Witness Tampering under 18 U.S.C. § 1512, 1513 and Florida Statute § 914.22)

195.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

196.    Under 18 U.S.C. § 1512, 1513 and Florida Statute § 914.22, it is unlawful to knowingly use intimidation, threats, corrupt persuasion, or physical force to influence, delay, or prevent the testimony of a witness in an official proceeding or to hinder, delay, or prevent the communication of information to law enforcement relating to the commission of a crime.

197.    Defendant, individually and in concert with others, engaged in a deliberate and sustained campaign of intimidation, threats, and coercion aimed at preventing Plaintiff from testifying truthfully and providing evidence against him and concealment to suppress Plaintiff's ability to testify or report crimes.

198.    Defendant used direct and indirect threats, retaliation, and psychological coercion to pressure Plaintiff into remaining silent about Defendant's criminal conduct.

199.    Defendant referred to Plaintiff as a "snitch" and warned Plaintiff of severe consequences should Plaintiff cooperate with law enforcement or legal authorities. This was done both personally and through intermediaries acting on Defendant's behalf.

200.    Defendant posted threats on Facebook, blaming Plaintiff for the suicide of Bony Rivera. Defendant also issued repeated death threats against Plaintiff, including explicit threats of kidnapping and harm directed at Plaintiff's minor son, Elijah Giovanni Manzaro.

201.    Defendant further engaged in psychological manipulation by attempting to contact Plaintiff before Plaintiff's memories had fully returned, to distort Plaintiff's recollection of the events.

202.    Surveillance footage captured Defendant trespassing on Plaintiff's property while attempting to evade detection. Additional security footage from shows a hitman known as Sigfredo Garcia associate with Defendant Eric—who is now serving a life sentence in an unrelated murder-for-hire case—in Plaintiff's alleyway. A police report was filed, corroborating this encounter.

203.    Defendant and his associates continued this pattern of intimidation, surveillance, and fraud over the course of several years, with the intent to suppress Plaintiff's memory and delay or prevent legal recourse.

204.    Defendant engaged in acts of intimidation, including but not limited to:

  i.   Direct and implied threats of physical harm.

  ii.  Surveillance of Plaintiff's residence and workplace.

  iii. Sending anonymous messages warning Plaintiff of "consequences" for speaking out.

  iv.  Coercing Plaintiff by offering substantial financial compensation in exchange for silence.

    v.  Using social media and professional connections to blackball and isolate Plaintiff.

205.  Defendant's actions constitute violations of:

    i.  18 U.S.C. § 1512(b), which prohibits intimidation, threats, or corrupt persuasion with intent to influence a witness's testimony.

    ii.  18 U.S.C. § 1512(d), which prohibits harassment to hinder, delay, or prevent the communication of information to law enforcement.

    iii.  18 U.S.C. § 1513(b), which prohibits retaliation against a witness for reporting a federal offense or providing truthful testimony.

    iv.  Florida Statute § 914.22(1)(e), which prohibits intentionally hindering or preventing a witness from testifying truthfully in a legal proceeding.

206.  Defendant's actions resulted in catastrophic physical injuries, including permanent sexual maiming, multiple inguinal hernias, and severe internal trauma.

207.  Defendant's conduct caused irreparable psychological harm, loss of memory, post-traumatic stress, and prolonged emotional distress, constituting

severe and ongoing damage to the Plaintiff's ongoing fear for their safety and well-being.

208.   As a direct and proximate result of Defendant's conduct, Plaintiff has suffered severe physical, emotional, and psychological harm, including but not limited to post-traumatic stress disorder (PTSD), anxiety, depression, permanent disfigurement, and other damages.

209.   Plaintiff seeks all available remedies under 18 U.S.C. § 1512, 1513 and Florida Statute § 914.22, including but not limited to compensatory damages, punitive damages, treble damages, attorneys' fees, medical costs, pain and suffering, and all other relief this Court deems just and proper.

### COUNT IX
### CAUSE OF ACTION AGAINST BRENDAN PAUL
### (Obstruction of Justice / Witness Tampering under 18 U.S.C. § 1512, 1513 and Florida Statute § 914.22)

210.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

211.   Under 18 U.S.C. § 1512, 1513 and Florida Statute § 914.22, it is unlawful to knowingly use intimidation, threats, corrupt persuasion, or physical force to influence, delay, or prevent the testimony of a witness in an official proceeding or to hinder, delay, or prevent the communication of information to law enforcement relating to the commission of a crime.

212.    Defendant, individually and in concert with others, engaged in a deliberate and sustained campaign of intimidation, threats, and coercion aimed at preventing Plaintiff from testifying truthfully and providing evidence against him and others, thereby obstructing justice.

213.    Defendant used direct and indirect threats, retaliation, and psychological coercion to pressure Plaintiff into remaining silent about Defendant's criminal conduct.

214.    Defendant, aware of Plaintiff's victimization and injuries, deliberately interfered with Plaintiff's access to medical treatment and support, thereby compounding Plaintiff's suffering and obstructing justice.

215.    Defendant took active measures to ensure that Plaintiff was isolated from law enforcement and other potential sources of support, preventing disclosure of the crimes committed against Plaintiff.

216.    Defendant engaged in acts of obstruction by facilitating the intimidation of witnesses and suppressing evidence of human trafficking, sexual assault, and coercion inflicted upon Plaintiff.

217.    Defendant furthered this obstruction by engaging in a coordinated effort to silence Plaintiff, including but not limited to:

       i.  Threats of severe consequences should Plaintiff seek justice or disclose his experiences.

    ii.  Suppressing Plaintiff's ability to communicate with law enforcement or other investigative bodies.

    iii.  Using financial incentives and coercion to suppress witness testimony and influence legal proceedings.

    iv.  Facilitating ongoing intimidation and threats to ensure Plaintiff's continued silence.

218.  Defendant Brendan Paul's actions constitute violations of:

    i.  18 U.S.C. § 1512(b), which prohibits intimidation, threats, or corrupt persuasion with intent to influence a witness's testimony.

    ii.  18 U.S.C. § 1512(d), which prohibits harassment to hinder, delay, or prevent the communication of information to law enforcement.

    iii.  18 U.S.C. § 1513(b), which prohibits retaliation against a witness for reporting a federal offense or providing truthful testimony.

    iv.  Florida Statute § 914.22(1)(e), which prohibits intentionally hindering or preventing a witness from testifying truthfully in a legal proceeding.

219.   Defendant's actions resulted in catastrophic physical injuries, including permanent sexual maiming, multiple inguinal hernias, and severe internal trauma.

220.   As a direct result of Defendant's obstruction of justice and witness tampering, Plaintiff has suffered significant harm, including physical injury, emotional distress, and damage to his ability to seek redress for the crimes committed against him.

221.   Defendant's conduct caused irreparable psychological harm, loss of memory, post-traumatic stress, and prolonged emotional distress, constituting severe and ongoing damage to the Plaintiff's ongoing fear for their safety and well-being.

222.   As a direct and proximate result of Defendant's conduct, Plaintiff has suffered severe physical, emotional, and psychological harm, including but not limited to post-traumatic stress disorder (PTSD), anxiety, depression, permanent disfigurement, and other damages.

223.   Plaintiff seeks all available remedies under 18 U.S.C. § 1512, 1513 and Florida Statute § 914.22, including but not limited to compensatory damages, punitive damages, treble damages, attorneys' fees, medical costs, pain and suffering, and all other relief this Court deems just and proper.

//

## COUNT X
## CAUSE OF ACTION AGAINST EMILIO ESTEFAN
### (Obstruction of Justice / Witness Tampering under 18 U.S.C. § 1512, 1513 and Florida Statute § 914.22)

224.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

225.   Under 18 U.S.C. § 1512, 1513 and Florida Statute § 914.22, it is unlawful to knowingly use intimidation, threats, corrupt persuasion, or physical force to influence, delay, or prevent the testimony of a witness in an official proceeding or to hinder, delay, or prevent the communication of information to law enforcement relating to the commission of a crime.

226.   Defendant individually and in concert with others, engaged in a deliberate and sustained campaign of intimidation, threats, and coercion aimed at preventing Plaintiff from testifying truthfully and providing evidence against him and concealing crimes to suppress Plaintiff's ability to testify or report criminal acts.

227.   Defendant Emilio Estefan used direct and indirect threats, retaliation, and psychological coercion to pressure Plaintiff into remaining silent about Defendant's criminal conduct.

228.   Defendant, aware of Plaintiff's victimization and injuries, deliberately interfered with Plaintiff's access to medical treatment and support, thereby compounding Plaintiff's suffering and obstructing justice.

229.   Defendant instructed Defendant Eric and Bony Rivera to remove Plaintiff from the sight of witnesses and actively prevented Gloria Estefan from calling for medical assistance, ensuring that Plaintiff's injuries and the crimes committed against him remained concealed.

230.   Defendant engaged in acts of obstruction by facilitating the intimidation of witnesses and suppressing evidence of the human trafficking, sexual assault, and coercion inflicted upon Plaintiff.

231.   Defendant furthered this obstruction by engaging in a coordinated effort to silence Plaintiff, including but not limited to:

    i.   Threats of severe consequences should Plaintiff seek justice or disclose his experiences.

    ii.   Suppressing Plaintiff's ability to communicate with law enforcement or other investigative bodies.

    iii.   Using financial incentives and coercion to suppress witness testimony and influence legal proceedings.

    iv.   Facilitating ongoing intimidation and threats to ensure Plaintiff's continued silence.

232.   Defendant Emilio Estefan's actions constitute violations of:

v.   18 U.S.C. § 1512(b), which prohibits intimidation, threats, or corrupt persuasion with intent to influence a witness's testimony.

vi.   18 U.S.C. § 1512(d), which prohibits harassment to hinder, delay, or prevent the communication of information to law enforcement.

vii.   18 U.S.C. § 1513(b), which prohibits retaliation against a witness for reporting a federal offense or providing truthful testimony.

viii.   Florida Statute § 914.22(1)(e), which prohibits intentionally hindering or preventing a witness from testifying truthfully in a legal proceeding.

233.   Defendant's actions resulted in catastrophic physical injuries, including permanent sexual maiming, multiple inguinal hernias, and severe internal trauma.

234.   As a direct result of Defendant's obstruction of justice and witness tampering, Plaintiff has suffered significant harm, including physical injury, emotional distress, and damage to his ability to seek redress for the crimes committed against him.

235.    Defendant's conduct caused irreparable psychological harm, loss of memory, post-traumatic stress, and prolonged emotional distress, constituting severe and ongoing damage to the Plaintiff's ongoing fear for their safety and well-being.

236.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered severe physical, emotional, and psychological harm, including but not limited to post-traumatic stress disorder (PTSD), anxiety, depression, permanent disfigurement, and other damages.

237.    Plaintiff seeks all available remedies under 18 U.S.C. § 1512, 1513 and Florida Statute § 914.22, including but not limited to compensatory damages, punitive damages, treble damages, attorneys' fees, medical costs, pain and suffering, and all other relief this Court deems just and proper.

### COUNT XI
### CAUSE OF ACTION AGAINST ADRIA ENGLISH A/K/A ADRIA SHERI ENGLISH
### (Obstruction of Justice / Witness Tampering under 18 U.S.C. § 1512, 1513 and Florida Statute § 914.22)

238.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

239.    Under 18 U.S.C. § 1512, 1513 and Florida Statute § 914.22, it is unlawful to knowingly use intimidation, threats, corrupt persuasion, or physical force to influence, delay, or prevent the testimony of a witness in an official

proceeding or to hinder, delay, or prevent the communication of information to law enforcement relating to the commission of a crime.

240.   Defendant, individually and in concert with others, engaged in a deliberate and sustained campaign of intimidation, threats, and coercion aimed at preventing Plaintiff from testifying truthfully and providing evidence against her, as well as concealing crimes to suppress Plaintiff's ability to testify or report criminal acts.

241.   Defendant used direct and indirect threats, retaliation, psychological manipulation, and coercion to pressure Plaintiff into remaining silent about Defendant's unlawful conduct.

242.   Defendant, aware of Plaintiff's victimization and injuries, deliberately interfered with Plaintiff's access to legal and medical resources, thereby compounding Plaintiff's suffering and obstructing justice.

243.   Defendant engaged in acts of obstruction by facilitating the intimidation of witnesses and suppressing evidence of the human trafficking, sexual assault, and coercion inflicted upon Plaintiff.

244.   Defendant furthered this obstruction by engaging in a coordinated effort to silence Plaintiff, including but not limited to:

       i.   Threats of severe consequences should Plaintiff seek justice or disclose their experiences.

    ii.  Suppressing Plaintiff's ability to communicate with law enforcement or other investigative bodies.

    iii.  Utilizing financial incentives and coercion to suppress witness testimony and influence legal proceedings.

    iv.  Facilitating ongoing intimidation and threats to ensure Plaintiff's continued silence.

245.   Defendant Adria English's actions constitute violations of:

    i.  18 U.S.C. § 1512(b), which prohibits intimidation, threats, or corrupt persuasion with intent to influence a witness's testimony.

    ii.  18 U.S.C. § 1512(d), which prohibits harassment to hinder, delay, or prevent the communication of information to law enforcement.

    iii.  18 U.S.C. § 1513(b), which prohibits retaliation against a witness for reporting a federal offense or providing truthful testimony.

    iv.  Florida Statute § 914.22(1)(e), which prohibits intentionally hindering or preventing a witness from testifying truthfully in a legal proceeding.

246.    Defendant's actions resulted in catastrophic physical injuries, including permanent sexual maiming, multiple inguinal hernias, and severe internal trauma.

247.    As a direct result of Defendant's obstruction of justice and witness tampering, Plaintiff has suffered significant harm, including physical injury, emotional distress, and damage to his ability to seek redress for the crimes committed against him.

248.    Defendant's conduct caused irreparable psychological harm, loss of memory, post-traumatic stress, and prolonged emotional distress, constituting severe and ongoing damage to the Plaintiff's ongoing fear for their safety and well-being.

249.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered severe physical, emotional, and psychological harm, including but not limited to post-traumatic stress disorder (PTSD), anxiety, depression, permanent disfigurement, and other damages.

250.    Plaintiff seeks all available remedies under 18 U.S.C. § 1512, 1513 and Florida Statute § 914.22, including but not limited to compensatory damages, punitive damages, treble damages, attorneys' fees, medical costs, pain and suffering, and all other relief this Court deems just and proper.

//

## COUNT XII
## CAUSE OF ACTION AGAINST ALL DEFENDANTS
### (Racketeering Activities under 18 U.S. Code § 1962 and Florida Statute § 895.03)

251.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

252.    Under 18 U.S. Code § 1962 and Florida Statute § 895.03 make it unlawful for any person, through a pattern of racketeering activity or through the collection of an unlawful debt, to acquire or maintain any interest in or control of any enterprise or real property or to participate in such enterprise's affairs through racketeering activities.

253.    Defendants, acting individually and in concert with each other, knowingly and intentionally engaged in a pattern of racketeering activity, which included using intimidation, threats, coercion, and corrupt persuasion to prevent Plaintiff from cooperating with law enforcement and providing testimony in ongoing criminal and civil proceedings.

254.    Defendants, through their collective actions, sought to manipulate and obstruct Plaintiff's ability to fully participate in legal proceedings by deploying threats of physical harm, damage to Plaintiff's reputation, and threats of harm to Plaintiff's family members, including their minor children.

255.    Defendants used various unlawful methods, including bribery, blackmail, and surveillance, in an attempt to interfere with Plaintiff's ability to

provide truthful testimony and prevent the disclosure of critical evidence that would have implicated Defendants in criminal activity.

256.   The conduct of Defendants, individually and in concert, resulted in a prolonged campaign of fear, intimidation, and manipulation, which caused Plaintiff substantial emotional distress, anxiety, and an ongoing sense of personal and familial insecurity, directly impairing Plaintiff's ability to proceed with legal action.

257.   Defendants also engaged in illegal activities such as fraudulent communications, conspiracy, and interference with lawful investigations, with the clear intent of preventing Plaintiff from providing information to law enforcement, which would have aided in the prosecution of their criminal actions.

258.   Through their collective actions, Defendants violated both federal and state racketeering statutes, including 18 U.S.C. § 1962 and Florida Statute § 895.03, by engaging in illegal and sustained conduct that harmed Plaintiff's ability to seek justice, intimidated witnesses, and unlawfully interfered with the legal process.

259.   As a direct and proximate result of Defendants' racketeering activities, Plaintiff has suffered severe emotional, psychological, and physical harm, loss of employment opportunities, and fear for their safety and well-being.

260.   Plaintiff seeks all available remedies under 18 U.S.C. § 1962 and Florida Statute § 895.03, including but not limited to compensatory damages,

punitive damages, attorneys' fees, costs, injunctive relief, and any other relief this Court deems just and proper.

## COUNT XIII
### CAUSE OF ACTION AGAINST ALL DEFENDANTS
### (Intentional Infliction of Mental Distress)

261.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

262.   Defendants, individually and collectively, engaged in extreme and outrageous conduct with the intent to cause Plaintiff severe emotional distress or with reckless disregard for the substantial probability that such distress would result.

263.   Defendants conduct was so egregious and beyond the bounds of decency that it would be regarded as atrocious and utterly intolerable in a civilized society.

264.   Defendant Diddy knowingly and intentionally engaged in a prolonged pattern of extreme and outrageous conduct designed to exert dominance, instill fear, and cause severe emotional distress to Plaintiff.

265.   Defendant Diddy repeatedly subjected Plaintiff to physical, sexual, and psychological abuse, using his power, wealth, and influence to control and manipulate Plaintiff's actions and emotions.

//

266.   Defendant Diddy facilitated and participated in coercive and degrading acts, leveraging Plaintiff's vulnerability to force compliance with his demands.

267.   Defendant Diddy intentionally exposed Plaintiff to a violent and hostile environment, where threats of harm, both explicit and implicit, were used to maintain control over Plaintiff's actions and silence any attempts to seek help or justice.

268.   Defendant Eric took direct action to physically remove Plaintiff from environments where help could be sought, ensuring that Plaintiff remained vulnerable and unable to escape the cycle of abuse.

269.   Defendant Eric engaged in verbal and psychological abuse, heightening Plaintiff's sense of hopelessness and fear.

270.   Defendants actively worked to cover acts of violence against Plaintiff, depriving Plaintiff of any avenue for relief or justice.

271.   Defendant Emilio engaged in a calculated scheme of intimidation, threats, and manipulation to ensure Plaintiff remained silent about the abuse and harm inflicted upon him.

272.   Defendant Emilio used his influence and financial power to suppress Plaintiff's ability to seek justice, leaving Plaintiff in a constant state of fear and distress.

273.   Defendant Emilio instructed and encouraged others to prevent Plaintiff from receiving medical attention, causing prolonged pain and suffering.

274.   Defendant Adria actively participated in the coercion and intimidation of the Plaintiff, engaging in psychological manipulation and humiliation.

275.   Defendant Adria played a role in facilitating the concealment of the Plaintiff's abuse, deliberately obstructing the Plaintiff's access to justice.

276.   Defendant Adria reinforced the threats made by other Defendants, ensuring that Plaintiff remained in a state of psychological distress and fear for their safety.

277.   Defendants, acting in concert, deliberately subjected Plaintiff to an extended campaign of psychological terror, utilizing threats, isolation, and manipulation to instill a deep sense of fear, hopelessness, and emotional devastation.

278.   Defendants' collective conduct was extreme, outrageous, and designed to inflict maximum psychological harm upon Plaintiff.

279.   Defendants' actions caused Plaintiff severe and ongoing emotional distress, including post-traumatic stress disorder (PTSD), loss of memory, anxiety, depression, and extreme psychological suffering.

//

280.    As a direct and proximate result of Defendants' intentional and outrageous conduct, Plaintiff has suffered:

i.   Severe emotional and psychological distress, including PTSD, anxiety, loss of memory and depression.

ii.  Physical manifestations of emotional distress, including sleep disturbances, chronic stress, and an inability to function in daily life.

iii. Loss of personal and professional opportunities due to the ongoing mental suffering inflicted by Defendants.

281.    Plaintiff seeks all available remedies under the law, including compensatory damages, punitive damages, medical expenses, therapy costs, attorneys' fees, and all other relief this Court deems just and proper.

## COUNT XIV
## CAUSE OF ACTION AGAINST ALL DEFENDANTS
### (Punitive Damages)

282.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

283.    Defendants engaged in intentional, malicious, and egregious conduct that warrants the imposition of punitive damages to punish them and deter similar future misconduct.

//

284.   Defendants acted with reckless disregard for Plaintiff's safety, well-being, and legal rights, subjecting Plaintiff to extreme emotional, physical, and psychological harm.

285.   Defendants' conduct was willful, wanton, and exhibited a conscious disregard for the law and the fundamental rights of Plaintiff, as evidenced by the following:

286.   Defendant Diddy orchestrated and facilitated the abuse, coercion, and intimidation of Plaintiff, using his influence, wealth, and power to silence and control Plaintiff and engaged in acts of violence, sexual coercion, and psychological manipulation, knowingly causing severe harm while ensuring Plaintiff remained unable to seek justice.

287.   Defendant Eric Mejias actively participated in Plaintiff's brutalization by drugging him with Xylazine ("Tranq") to keep him unconscious after a near-fatal beating at the gang house. Later ensured the Plaintiff remained incapacitated by leaving him for dead at his apartment, preventing medical or legal intervention. His actions, aimed at suppressing evidence and facilitating ongoing abuse, constitute witness tampering, obstruction of justice, and intentional infliction of emotional distress, demonstrating a depraved indifference to human life and warranting punitive damages.

//

288.   Defendant Brendan acted as an enforcer and accomplice in obstructing justice and intimidating Plaintiff, directly participating in threats, suppression of evidence, and preventing Plaintiff from reporting crimes.

289.   Defendant Emilio played a key role in ensuring Plaintiff remained silent through financial coercion, threats, and active interference with Plaintiff's ability to seek legal recourse or medical assistance.

290.   Defendant Adria willingly participated in acts designed to isolate, manipulate, and psychologically torment Plaintiff, furthering Defendants' unlawful objectives and intensifying Plaintiff's suffering.

291.   Defendants' actions were not only unlawful but demonstrated a callous and deliberate indifference to Plaintiff's rights, constituting conduct deserving of the highest level of punitive damages.

292.   Given the severity of the harm inflicted and Defendants' willful and repeated misconduct, punitive damages are necessary to punish Defendants and serve as a deterrent to others who might engage in similar acts.

293.   Plaintiff seeks an award of punitive damages against Defendants in an amount sufficient to punish and deter them and others from engaging in similar misconduct in the future.

//

//

## COUNT XV
## CAUSE OF ACTION AGAINST ALL DEFENDANTS
## (INJUNCTIVE RELIEF)

294.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

295.   Plaintiff seeks injunctive relief to prevent Defendants from continuing their unlawful conduct and to protect the Plaintiff from further harm, harassment, and retaliation.

296.   Defendants have engaged in a continuous pattern of obstruction, intimidation, and retaliatory conduct that poses an ongoing and imminent threat to Plaintiff's safety, well-being, and ability to seek justice.

297.   Without injunctive relief, the Plaintiff is at risk of further intimidation, harassment, and attempts to conceal or destroy evidence that is critical to this case.

298.   Plaintiff seeks an order restraining Defendants, their agents, employees, and anyone acting on their behalf from:

      i.   Contacting, threatening, harassing, or interfering with Plaintiff in any manner.

      ii.   Attempting to intimidate or influence witnesses or potential witnesses in this case.

      iii.   Destroying, altering, or concealing any evidence relevant to this action.

        iv. Using financial, legal, or other coercive means to silence Plaintiff or prevent Plaintiff from pursuing legal remedies.

299. Plaintiff also seeks an order requiring the Defendants to preserve all relevant communications, documents, and other evidence related to the claims in this Complaint, including digital and electronic records.

300. Plaintiff has no adequate remedy at law to prevent the continued harm caused by Defendants' conduct, and injunctive relief is necessary to protect Plaintiff's legal rights and personal safety and well-being.

301. As a result, the Plaintiff respectfully requests that this Court grant injunctive relief as deemed appropriate and just under the circumstances, along with any other equitable relief necessary to prevent further harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against all Defendants, jointly and severally, and grant the following relief:

1. Award compensatory damages in an amount to be determined at trial, including but not limited to damages for physical, emotional, and psychological injuries, pain and suffering, past and future medical expenses, lost earnings, and loss of enjoyment of life.

//

2. Award punitive damages in an amount sufficient to punish Defendants for their egregious misconduct and to deter similar conduct in the future.

3. Award treble damages where applicable under federal and state law, including but not limited to damages under RICO statutes, witness tampering statutes, and other statutory violations.

4. Issue a permanent injunction restraining Defendants, their agents, employees, and anyone acting on their behalf from: (i) threatening, harassing, intimidating, or interfering with Plaintiff in any manner. (ii) attempting to influence, intimidate, or retaliate against witnesses or potential witnesses. (iii) concealing, destroying, or altering any evidence relevant to this case. (iv) engaging in any further unlawful conduct alleged in this Complaint.

5. Award reasonable attorneys' fees, expert witness fees, and litigation costs incurred in connection with this action pursuant to applicable law.

6. Grant such other and further relief as this Court deems just, equitable, and proper.

//

//

//

//

## **JURY DEMAND**

Plaintiff demands a trial by jury on all claims triable as of right.

## **VERIFICATION**

Under penalties of perjury, I Manzaro Joesph declare that I have read the

foregoing and that the facts alleged are true to the best of my knowledge and belief.

*Manzaro Joseph*
_____
Manzaro Joesph

Dated: April 11th, 2025

THE LAW OFFICES OF TRAVIS R. WALKER, P.A.

By: __*/s/ Travis R. Walker*___
Travis R. Walker Esq.
Florida Bar No. 33693
1100 SE Federal Highway
Stuart, Florida 34994
Telephone: (772) 708-0952
travis@traviswalkerlaw.com
service@traviswalkerlaw.com