UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:25-cv-80422-DMM

MANZARO JOSEPH, an
individual,

      Plaintiff,
v.

SEAN JOHN COMBS a/k/a Diddy,
an individual, ERIC MEJIAS, an individual,
BRENDAN PAUL, an individual,
EMILIO ESTEFAN, an individual, ADRIA
ENGLISH a/k/a ADRIA SHERI ENGLISH,
an individual, Does Johns,

      Defendants.
_____/

**DEFENDANT EMILIO ESTEFAN, JR.'S**
**MOTION FOR RULE 11 SANCTIONS**

Defendant, Emilio Estefan, Jr. ("Estefan"), by and through undersigned counsel, and pursuant to Rule 11(c), Fed. R. Civ. P., respectfully requests this Court's entry of an Order of sanctions against Plaintiff and Plaintiff's counsel.[1] In support of his Motion, Estefan states as follows:

**Introduction**

As set forth more particularly below, Estefan has been falsely and cavalierly dragged into this lawsuit without any factual or legal basis, causing him and his family enormous stress and humiliation. It is evident that Plaintiff's counsel conducted no pre-suit investigation or he could have easily discovered the falsity of many of the claims made. Moreover, Plaintiff's counsel was

---

[1] This Motion is being served upon counsel on July 3, 2025 but will not be filed with the Court for at least 21 days, pursuant to Rule 11(c)(2).

1

warned by this Court that it was aware of prior frivolous claims made by Plaintiff, but made no attempt to modify any of the claims made against Estefan, filing an Amended Complaint, DE 11, that only eliminated the names of two purported witnesses.  And while undersigned counsel notified Plaintiff's counsel of Estefan's intent to seek Rule 11 sanctions by letters dated April 2, 2025 (Exh. A) and April 28, 2025 (Exh. B), Plaintiff's counsel never bothered to respond.

The legal claims made are as frivolous as the factual allegations.  As this Court noted, it is a classic "shotgun" pleading, abhorred by the courts and independently sanctionable.  It is believed that the claims made against Estefan were made for an improper purpose; namely, to take advantage of Estefan's celebrity status (as well as other celebrities' fame) in order to garner attention.  In this respect, Plaintiff's reckless plan was successful in that it generated local and global media attention.  This was particularly hurtful to Estefan because the negative media attention coincided with the commercial release of two new songs performed by Gloria Estefan, which Estefan produced, and that were part of planned promotion in advance of the release of a new album to be distributed and marketed by a major record label.  Instead of focusing on these two new releases and upcoming album, the media hounded the Estefans with questions about the horrendous and false allegations contained in Plaintiff's Complaint.

**Rule 11 Standard**

Rule 11 of the Federal Rules of Civil Procedure states in pertinent part:

(b) *Representations to the Court.* By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief formed after an inquiry reasonable under the circumstances:
(1) it is not being presented for any improper purpose such as to harass, cause unnecessary delay, or needlessly increase the costs of litigation;
(2) the claims, defenses, and other legal contentions are warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law;

>   (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed R. Civ. P. 11(b)(1)-(3).

As set forth in *Trump v. Clinton*, 640 F. Supp. 3d 1321, 1326 (S.D. Fla. 2022):

>   "Rule 11 deters attorneys and litigants from clogging federal courts with frivolous filings. It also rewards litigants who admit their mistakes within a 21-day safe harbor period—and penalizes those who refuse." *Huggins v. Lueder, Larkin & Hunter, LLC*, 39 F. 4th 1342, 1344 (11th Cir. 2022). The Eleventh Circuit requires a "two-step inquiry as to (1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware they were frivolous." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998).
>
>   Rule 11 sanctions are properly assessed (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose. *Massengale v. Ray*, 267 F.3d 1298, 1301 (11th Cir. 2001) (citing *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996)).

"Rule 11 stresses the need for some prefiling inquiry." *Mike Ousley Prods., Inc. v. WJBF-TV*, 952 F.2d 380, 382 (11th Cir. 1992). As such, it "imposes 'an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing,' and 'the applicable standard is one of reasonableness under the circumstances.'" *Walther v. McIntosh*, 572 Fed. Appx. 881, 883 (11th Cir. 2014) (quoting *Bus. Guides, Inc. v. Chromatic Comm. Enter., Inc.*, 498 U.S. 533, 551, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991)); *see also Chambers v. NASCO, Inc.,* 501 U.S. 32, 47, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) ("Rule 11 ... imposes an objective standard of reasonable inquiry ....").

Of course, the depth of the pre-suit investigation that ought to be undertaken in order to pass muster under Rule 11 is in direct proportion to the seriousness of the claims made. In this case, not only is Estefan alleged to have committed various criminal acts, but they are some of

the most reviled criminal acts in the hierarchy of crimes. Any lawyer who would agree to file a lawsuit accusing a highly regarded member of the community of these kinds of acts should be held to the highest standard in terms of the requisite pre-suit investigation. In addition, the patent absurdity of the allegations would cause any lawyer to be highly skeptical and require substantial corroborating evidence before agreeing to file this lawsuit against Estefan.

Moreover, as this Court is aware, a lawyer's Rule 11 obligations do not end once suit is filed. A lawyer is required to continue to assess the veracity of factual assertions and the viability of legal claims after suit is filed. *Turner v. Sungard Business Systems, Inc.*, 91 F.3d 1418, 1422 (11th Cir. 1996) ("'[A] litigant's obligations with respect to the contents ... [of pleadings or motions] ... are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit.'" (quoting Fed. R. Civ. P. 11(b)-(c), advisory committee's note to 1993 amendment)).

Plaintiff's Amended Complaint alleges the following claims against Estefan: Human Trafficking under 18 U.S.C. § 1595; Fla. Stat. § 787.06; Obstruction of Justice/Witness Tampering under 18 U.S.C. §§ 1512, 1513 and Fla. Stat. § 914.22; Racketeering Activities under 18 U.S.C. § 1962 and Fla. Stat. § 895.03; Intentional Infliction of Mental Distress.[2] The pleadings in this case contain factual allegations that were either knowingly false or made in reckless disregard for the truth. At a minimum, they were advanced without a proper pre-suit investigation and Plaintiff's counsel ignored evidence of falsity presented to him after the lawsuit was filed. As to the legal claims, as discussed below, there was no reasonable chance of success

---

[2] Plaintiff also alleges punitive damages and injunctive relief as separate counts, although they are only remedies and not separate causes of action.

4

as to any of the claims based on the insufficiency of the allegations themselves and well-established precedent.

**Factual Claims**

As to Estefan, Plaintiff claims that he was at the "Estefan Mansion" briefly, before being shuttled from the "Estefan Mansion" through a secret tunnel, to "Diddy's Mansion" where a "freak off" party took place. The Amended Complaint reads as though the "Estefan Mansion" at One Star Island is Estefan's residence, which is not true. The Estefans own two houses next to one another, at 38 and 39 Star Island, where they have raised their family and lived for many years (the "Estefans' residence"). The "Mansion" Plaintiff refers to is on another part of Star Island and is a house that was, before the Estefans sold it, used for other family members (hereafter referred to as the "Estefans' family house"). At the time of the event alleged in the Complaint, i.e., "early April 2015," one of the Estefans' close family members and young son occupied the house. In fact, the Estefans' close family member occupied the house from approximately 2012 to the beginning of 2019. At the time of the event alleged in the Complaint, his young son would have only been a toddler. No parties were thrown during that time period, 2012-2019, at the Estefans' family house. In April 2015, Sean Combs owned the house next door to the Estefans' family house, Two Star Island, having bought it from Tommy Mottola, a famous record company executive in approximately 2003. Exhibit C is a map of Star Island. Highlighted in red is the Estefans' residence; highlighted in yellow is One Star Island and highlighted in blue is Two Star Island. In 2021, the Estefans sold the family house to Sean Combs. The Estefans had visited Tommy Mottola at Two Star Island when he owned it; the Estefans have never been inside either house, One Star Island or Two Star Island, when Combs

5

#64035291 v1

owned either of them. See Declarations of Emilio Estefan, Jr. and Gloria Estefan, attached as Exhibits D and E, respectively.

Plaintiff claims that he and his captors arrived at Star Island a little after midnight, whereupon one of the Defendants told "security that they were attending an event at the Estefan Mansion [and] mentioned it was Christian's birthday party that night." DE 11, Paragraph 25. It is believed that "Christian" refers to Sean Combs' son (see Paragraph 29), whom the Estefans have never met. This allegation is implausible on its face as anyone who has gone through a security gate at a development knows. Why would security guards admit persons to one residence on Star Island in order to attend a birthday party that was purportedly taking place at another resident's house? Moreover, Plaintiff claims that he was seriously and visibly injured and in a drug stupor at the security gate house, yet the security guards had no problem allowing him and his captors passage. The Amended Complaint then alleges that he "was dragged through the back entrance of the Estefan Mansion [One Star Island] at approximately 12:30 a.m." DE 11, Para. 26. It is unclear how this could have occurred since, in order to gain access to the "back entrance," Plaintiff and those accompanying him would have had to be let in through two separate gates (not including the security guard station gate) by the occupant of the house, which simply did not occur. See map of Star Island, Exh. C, which shows that the "back" of the property abuts the Bay. One cannot simply park at One Star Island and walk in the back door, as the Plaintiff suggests. See Exhibits D and E.

The Amended Complaint alleges that both Gloria Estefan and LeBron James witnessed Plaintiff at the "Estefan Mansion" in an injured state and that Estefan would not allow Gloria Estefan to call an ambulance. DE 11, Para. 26. Gloria Estefan denies being present at the "Estefan Mansion," since it was occupied by a family member in "early April 2015," and denies

6

#64035291 v1

ever seeing or knowing Plaintiff. Exhibit E. A simple review of LeBron James' basketball schedule for the week of April 1, 2015 reveals that he was in Cleveland playing basketball at that time. The attached highlighted excerpt of the Cleveland Cavaliers 2015 schedule, information publicly available from many sources, including Basketball-Reference.com, shows that during the first week of April 2015, Cleveland played home games in Cleveland at the Quicken Loans Arena against the Miami Heat on April 2, 2015 and against the Chicago Bulls on April 5, 2015. The Cavaliers then traveled to Milwaukee for a game against the Milwaukee Bucks at the BMO Harris Bradley Center on April 8, 2015. Exhibit F. The attached highlighted box scores of the games, information publicly available from many sources, including NBA.com, show that LeBron James was present at and played in all three games. Exhibit F. Mr. James has also issued a public statement in response to this lawsuit to the same effect: "This is demonstrably false and doesn't even merit a report or response. A basic internet search shows what LeBron was doing all of April 2015. He was playing basketball for the Cleveland Cavaliers and never in Miami." Page Six of the New York Post, published April 12, 2025. Exhibit G.

The initial Complaint, DE 1, also placed Shawn Carter ("Jay Z") and Beyonce Knowles-Carter ("Beyonce") at the alleged "freak off." Paragraph 21 of the initial Complaint read: "High-profile individuals, including Jacob Arabo, Jay-Z, Gloria Estefan, LeBron James and Beyonce Knowles-Carter, are identified as witnesses due to their presence or knowledge of the events surrounding the 'freak-off' orchestrated by Defendant Diddy." And at Paragraph 29 of the initial Complaint, it was alleged that after being taken to "Diddy's Mansion" through the secret tunnel:

> [T]he Plaintiff found himself inside a large party area, upon information and belief that it was Diddy's son's birthday party, Jay Z and Beyonce Knowles-Carter were seated in the room, and upon seeing Plaintiff, Beyonce Knowles-Carter asked, 'What's this? What's this all about? Why is this half-naked white man with a cock

7

mask standing here in front of me?' Defendant Eric responded, 'Diddy wants him to see what we do to snitches. This is part of his punishment.'

DE 1, Para. 29.

However, on April 11, 2025, Plaintiff filed an Amended Complaint deleting all reference to either Jay Z or Beyonce Knowles-Carter alleging, instead, that Eric "told a person inside the party," "Diddy wants him to see what we do to snitches. This is part of his punishment." DE 11, Para. 29. The deletion of Jay Z and Beyonce's names, and the alleged statement by Beyonce, were the only differences between the initial Complaint and the Amended Complaint. The reason for Plaintiff's deletion was reported by Page Six of The New York Post, Exhibit G – Jay Z and Beyonce's counsel had provided Plaintiff's counsel with publicly available information proving that neither were in Miami in "early April 2015." Page Six provides the specifics: "A Washington Square News article places Jay Z, 55, at an NYU appearance at the time and, shortly after he and Beyonce, 43, went on a romantic trip to Hawaii, per photos previously obtained by the Daily Mail." Page Six of The New York Post, Exhibit G, published April 12, 2025. The Page Six article provides links to the referenced article and photos.[3] The article also mentions that there are "other big stars that are still named in the complaint," including Estefan.

Plaintiff also claims that he was shuffled from the "Estefan Mansion" to Combs' house next door, where the purported "freak off" took place, through a "concealed tunnel." DE 1 and

---

[3] It should be noted that, despite the seriousness of the allegations, including alleged physical harm that required medical attention, Plaintiff's Complaint fails to actually allege the date this event occurred. Jay Z, Beyonce and LeBron James have all been able to confirm they were not in Miami during the entire week alleged in the Complaint. The Estefans believe they were in town at least part of that week, as it was Easter week, a time traditionally spent with family; however, if Estefan were apprised of the precise date, he could pinpoint his whereabouts. It is inconceivable that Plaintiff is not able to provide the precise date, as he claims he received medical attention for very serious injuries. *See e.g.*, Paragraph 38 of Amended Complaint.

11, Para. 28. This is another allegation that is so outlandish on its face that it certainly warranted serious pre-suit investigation. As a simple Google search would have revealed to Plaintiff's counsel (and as every resident of Miami Beach knows), Star Island consists of man-made islands that were created by Carl Fisher between 1917 and 1920 by dredging sand with the aid of the U.S. Army Corps of Engineers. Anyone attempting to "tunnel" down would face significant permitting and regulatory requirements as well as practical and environmental challenges, including Florida's unusually high water table. The cost would no doubt be astronomical. It is absurd. Suffice it to say, the Estefans deny there was ever a tunnel between the two houses and Plaintiff could have verified this based on the records of the City of Miami Beach Building and/or Zoning Departments and/or environmental regulators. See Exhibits D and E.

Estefan has no knowledge of the Plaintiff or his co-Defendants Eric Mejias, Brendan Paul or Adria English a/k/a Adria Sheri English. None of these people are known to Estefan. With regard to Sean John Combs a/k/a Diddy, Estefan has had some contact with him, the last of which was many years prior to the alleged "freak off." Specifically, from approximately 2005 to 2007, Estefan (through companies owned or controlled by Estefan) entered into two agreements with Combs' record label Bad Boy Records, one related to artist management and one related to producer services. During the two years when the agreements were in force, only minimal business was actually conducted (as to one agreement, no business was conducted) and the contracts ended in 2007. Combs and Estefan attended one public promotional event together some time after the 2005 agreements were signed. Combs and Estefan have not had any other relationship, personal or business, despite this minor business relationship <u>8 years before</u> the event alleged in Plaintiff's Complaint. Estefan was never in Combs' house and Combs was

9

never in the Estefans' residence or family house, except after Combs purchased the Estefans' family house in 2021.  See Exhibits D and E.

Moreover, the Plaintiff's "Verification" of the Complaint and Amended Complaint, DE 1, p.64 and DE 11, p.64, does nothing to lessen counsel's duties under Rule 11 or provide a shield from sanctions.  In *In re Beeton*, 89 F.3d 827 (4th Cir. 1996), the Fourth Circuit rejected the suggestion that filing a "verified complaint" somehow precluded Rule 11 sanctions, voicing principles applicable here:

> But Rule 11 imposes a duty on attorneys to investigate beyond the mere allegations of their clients, *Blue v. United States Dep't of the Army*, 914 F.2d 525, 542 (4th Cir. 1990) ("Undoubtedly there are instances in which an attorney acts irresponsibly by failing to investigate the facts behind his client's claim and by instead relying solely on the client's testimony to support his case."), *cert. denied sum nom., Chambers v. United States Dep't of the Army,* 499 U.S. 959 (1991), and there is no indication that Beeton conducted a thorough investigation even after he received substantial evidence that appeared to undermine his client's story.

*Id.* at *3.  The *Beeton* court concluded, "the district court did not abuse its discretion by sanctioning [plaintiff's attorney] for relying on his client's naked assertions."  Id.

**Legal Theories**

Rule 11 sanctions are also warranted when a plaintiff's legal theories have no reasonable chance of success and cannot be advanced as a reasonable argument to change existing law. *Massengale*, 267 F.3d at 1301.

"Shotgun pleadings" are abhorred by the courts and are considered tantamount to obstruction of justice.  *See Davis v. Coca Cola Bottling Co. Consol.*, 516 F.3d 955, 982 n.66 (11th Cir. 2008).  As has been explained, "[s]hotgun pleadings, if tolerated, harm the court by impeding its ability to administer justice.  The time a court spends managing litigation framed by shotgun pleadings should be devoted to other cases waiting to be heard…".  *Byrne v. Nezhat*, 261 F. 3d 1075, 1131-32, 1130 n.110, *abrogated on other grounds as recognized by Jackson v.*

10

#64035291 v1

*Bank of Am.*, 898 F.3d 1348, 1357 n.10 (11th Cir. 2018) (citations omitted).  And as the Eleventh Circuit noted in *Byrne*, plaintiffs file shotgun pleadings and frivolous claims to extort settlement of unmeritorious claims.  Such is the case here.

Plaintiff's Amended Complaint suffers from myriad tell-tale signs of being a shotgun pleading: (1) each count adopts the allegations of all preceding counts; (2) the Amended Complaint is replete with vague and conclusory allegations; (3) the allegations merely "parrot" elements of various causes of action; (4) the Amended Complaint is lacking in specificity, lumping all Defendants together, without indicating precisely which Defendant is being accused of which act or conduct.

By letters dated April 2 and April 25, 2025, Estefan's counsel placed Plaintiff's counsel on notice of these defects, including citation to authorities, yet Plaintiff took no action to remedy the pleading and, in fact, did not respond to counsel's communication.  Exhs. A and B.  In denying Plaintiff's Motion to Proceed in Forma Pauperis, the Court cautioned it was aware of Plaintiff's pattern of filing "numerous scattershot pleadings" and filing "frivolous claims," and that, as a result, the Court was leery about the "ultimate viability of this action."  DE 10, p. 2, entered April 3, 2025.  Nevertheless, despite the Court's implicit warning and counsel's direct warnings, Plaintiff has neither amended his Amended Complaint to meet basic legal requirements nor dismissed it in light of its complete lack of foundation.  Indeed, despite the Court's April 3, 2025 Order and counsel's April 2, 2025 correspondence, Plaintiff repeated all of the sanctionable allegations as to Estefan made in the Complaint in the subsequently filed Amended Complaint.

Additionally, Plaintiff's claim for "human trafficking" was doomed to fail because nothing like that has been alleged with respect to Estefan.  Instead, Plaintiff vaguely asserts that

11

Estefan "conspired" with the actual traffickers,[4] and "profited" from events where Plaintiff and others were forced into sexual exploitation "in commercial settings." The Amended Complaint alleges no facts supporting that Estefan reached an agreement with any Defendant, nor does it set forth any details as to the purported conspiracy's members or the time, place or content of any specific acts purportedly in furtherance thereof. Nor has Plaintiff alleged a "beneficiary" claim under established Eleventh Circuit law. See § II of Estefan's Motion to Dismiss.

Moreover, Plaintiff's attempt to assert a claim against Defendant Estefan for "obstruction of justice/witness tampering" under a series of criminal statutes, specifically, 18 U.S.C. §§ 1512 and 1513 and § 914.22, Florida Statutes had no reasonable chance of success, as it is well-settled that those federal and state witness tampering and obstruction statutes provide for no private right of action and that civil actions premised thereon must be dismissed. *See, e.g., Anthony Distributors, Inc. v. Miller Brewing Co.,* 882 F. Supp. 1024, 1034 (M.D. Fla. 1995) and cases cited in § 3 of Estefan's Motion to Dismiss.

Moreover, Plaintiff had no reasonable expectation to proceed on his claim for intentional infliction of emotional distress based on the vague allegations concerning Estefan's conduct as compared against the high legal standard imposed by Florida Courts. As with other claims, Estefan is simply lumped in with the other "Defendants," simply parroting the legal standard for "outrageous conduct." Paragraph 262. Specifically with regard to Estefan, Plaintiff vaguely alleges that Estefan somehow "intimidated" Plaintiff and refused to obtain medical attention for him  Even if these allegations were true – and they are not – this alleged conduct does not rise to the level of conduct that amounts to intentional infliction of emotional distress under Florida law.

---

[4] Defendant takes no position on whether Plaintiff was ever the victim of sex trafficking as Defendant has no knowledge of any of the allegations of the Amended Complaint pertaining to other Defendants. Nothing contained herein should be construed as agreement with any of the allegations of the Amended Complaint.

See examples and citations to authorities set forth in Estefan's Motion to Dismiss at § V. "[T]he standard for 'outrageous conduct' is particularly high in Florida," *Clemente v. Horne*, 707 So.2d 865, 867 (Fla. 3d DCA 1998), and that standard is not met here.

Finally, and without belaboring the point as this Court need not be educated, having written extensively on the subject, "the use of shotgun pleadings to support a frivolous RICO claim" is itself sanctionable. *Trump v. Clinton*, 653 F. Supp. 3d 1198, 1214-15 (S.D. Fla. 2023), reiterating the Eleventh Circuit's criticism, in *Byrne v. Nezhat*, 261 F.3d 1075 (11th Cir. 2001) and *Pelletier v. Zweifel*, 921 F.2d 1465 (11th Cir. 1991).[5] "Particularly with regard to civil RICO claims, plaintiffs must *stop and think* before filing them." 653 F. Supp. 3d at 1214 (emphasis in original).

Plaintiff's purported RICO claim fails at each step. The Amended Complaint fails to plead facts that plausibly suggest the existence of an enterprise, or that the Defendants conducted an enterprise. Plaintiff has not pled *facts* that plausibly suggest the Defendants were involved in an agreement to participate in a criminal enterprise, and as to Defendant Estefan, ultimately alleges only a brief interaction with Plaintiff and his alleged attackers (which, of course, Estefan denies).

The RICO claim also fails to allege a pattern of racketeering activity. RICO is aimed not at "sporadic, isolated criminal acts," but ongoing criminal activity. *Id.* As set forth above, none of the purported "predicate acts" are adequately alleged, with the allegations of human trafficking, obstruction of justice and witness tampering being founded on vague generalizations and legal conclusions rather than salient factual allegations. As to Estefan, the RICO allegations consist entirely of vague, conclusory statements and inflammatory labels. *See, e.g.*, Paragraphs 271-273. The Amended Complaint, therefore, fails to plead facts which plausibly suggest that Defendants participated in either an "enterprise" or a "pattern of racketeering activity."

---

[5] Each abrogated on other grounds by *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 661, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008).

Further, Plaintiff alleges that the Defendants acted "in concert with each other" through "collective actions," yet provides no factual allegations to support a RICO conspiracy. Plaintiff fails to allege any facts, such as times, places, or persons involved, which would indicate the existence of a common purpose to commit racketeering activity. Additionally, Plaintiff lacks standing under RICO, which is narrower than Article III standing, and requires an injury to "business or property" arising from violation of a predicate act. 18 U.S.C. 1964 (c). The emotional and physical injuries alleged by Plaintiff do not support a RICO claim.

In short, Plaintiff's ill-founded RICO claim is similar to the deficient claim found by the Court to warrant the imposition of sanctions in *Trump v. Clinton*, 640 F. Supp. 3d 1321, 1330 (S.D. Fla. 2022):

> The RICO conspiracy claims were entirely conclusory. Moreover, there is no standing to bring a RICO conspiracy claim unless injury resulted from violation of a substantive provision of RICO. *See Beck v. Pupis,* 529 U.S. 494, 496, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000); *Douglas Asphalt Co. v. QORE, Inc.,* 657 F.3d 1146, 1152 (11th Cir. 2011). Here Plaintiff could not state a RICO claim without two predicate acts, and he failed to plausibly allege even one. He also failed to adequately allege standing, a pattern of racketeering activity, or the existence of an enterprise. Moreover, the claims were barred by the statute of limitations. In short, Plaintiff's RICO claim failed at every step of analysis. *Id.* at 1330.

Similarly, Plaintiff here has failed at every step of the analysis. It is evident that Plaintiff's RICO claim was filed without an iota of legal support.

**Plaintiff's and Plaintiff's Counsel's Motivations**

In terms of Plaintiff's motivation, it seems obvious that Plaintiff wanted to include celebrities in the Complaint to garner media attention and that Plaintiff's counsel's motivation to proceed with patently outlandish allegations without checking even publicly available information, was to also garner attention for himself. Plaintiff's counsel wanted to be perceived as handling a "high-profile" celebrity case. There is certainly nothing in Plaintiff's counsel's

14

background that would indicate any expertise with respect to any of the claims made here. And Plaintiff's and counsel's objective to receive media attention was very successful, much to the Estefans' detriment. This "story" was covered both globally and locally, with Estefan not being able to appear in public without being sieged with questions about the merits of such horrific allegations. Although not comprehensive, the following media covered it: People, Forbes, Fox News, The New York Post and Yahoo News. See Exhibit H for a more comprehensive list. And as first mentioned, the timing for the Estefans could not have been worse since the filing of the complaint and the consequent news coverage coincided with the release of two new Gloria Estefan songs on March 20, 2025 and May 1, 2025, entitled "Raíces" and "La Vecina (No Sé Na')," produced by Estefan. As is customary in the industry, these songs were released in advance of Gloria Estefan's new album entitled "Raíces," which was released at the end of May 2025. The time period in which this suit was filed was, therefore, crucial for the planned marketing and promotion of not only the two songs, but the Album itself. The negative publicity, which persists, thwarted the Estefans' marketing and promotional efforts, no doubt causing significant financial harm in lost sales. See Exhibits D and E. The timing seems planned to cause maximum harm to the Estefans since, although the initial Complaint was filed on April 1, 2025 and the Amended Complaint was filed on April 11, 2025. Yet, Plaintiff did not serve Estefan with the Complaint (or attempt to serve him) until months later, on June 24, 2025. Apparently, Plaintiff's counsel was more interested in the media attention than actually advancing the lawsuit.

WHEREFORE, based on the foregoing Defendant Estefan respectfully requests the Court to enter an Order imposing both monetary and non-monetary sanctions under Rule 11.

15

#64035291 v1

Respectfully submitted,

GRAY ROBINSON, P.A.
*Attorneys for Defendant Emilio Estefan*
333 S.E. 2nd Avenue, Suite 3200
Miami, Florida 33131
Phone: (305) 416-6880
Fax: (305) 416-6887
karen.stetson@gray-robinson.com

By: /s/ Karen L. Stetson
    Karen L. Stetson
    Florida Bar No.: 742937
    Jonathan L. Gaines
    Florida Bar No.: 330361

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served upon Plaintiff's counsel in accordance with Rule 11(c)(2), Fed. R. Civ. P. this 3rd day of July 2025.

By: /s/ Karen L. Stetson

16

#64035291 v1

17

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed with the Clerk of the Court and furnished via CM/ECF to counsel for the plaintiff, on this 25th day of July, 2025.

By: /s/ Karen L. Stetson

#64035291 v